United States District Court
Eastern District of New York

2:17-cv-06302 (LDW)(SIL)

Josh Berger, individually and on behalf
of all others similarly situated,

Plaintiff,

- against -

Forager Project, LLC,

Defendants

First Amended Complaint

Plaintiff Josh Berger ("plaintiff") individually and on behalf of all others similarly situated, by

attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff,

which are based on personal knowledge:

1.      Forager Project, LLC ("defendant") manufactures and sells juice products

under the "Forager Project" brand name (the "Products").

2.      The Products are twelve (12) ounce fruit and/or vegetable juice blends, sold

by third-parties in brick-and-mortar stores and online.

3.      The fanciful or descriptive names attributed to the Products include "Greens

& Avocado," "Greens & Greens," "Roots & Ginger," and "Greens & Apple."[1]

---

[1] Defendant may discontinue offering some products and regularly introduces new products that are also labeled in
the manner described here. Defendant may also market and sell additional substantially similar products of which
plaintiff is unaware. Plaintiff will ascertain the identity of any such additional products as discovery progresses and
reserves the right to amend the list of products at issue as necessary.



4.     The Products purport to be made through cold-pressing, a method of expressing juice from fruits and vegetables.

5.     The Products contain a mix of fruits and vegetables ("substantive ingredients") and herbs and spices such as salt, fennel and cayenne ("non-substantive ingredients").

6.     In actuality, the Products are made through multiple steps, only one of which is disclosed.

7.      "Cold-pressing" owes much of its popularity to the convergence of several trends in the mid-to-late aughts (first decade of 2000).

8.     One of these trends was the emergence of leafy greens such as kale, dubbed

by many at the time as a "superfood" for its supposed health benefits.

9.      Another factor was growing awareness of the negative qualities of juice products with high amounts of added sugar and preservatives.

10.     At some point, perhaps realizing that it was easier to consume kale, and other non-traditional juice ingredients like collard greens and spinach, as a drink, stand-alone retail establishments emerged which made and sold juice blends of these products.

11.     Almost universally, the method of choice to convert these ingredients into juice was a cold-press, or traditional masticating juicer, with gears.

12.     Contrary to its name, cold-pressing does not inject cold air or require lower temperatures – the "cold" prefix distinguishes this method from a centrifugal juicer.

13.     Cold-pressing is preferred vis-à-vis a centrifugal juicer for several reasons:

| | Centrifugal | Cold-Pressed |
|---|---|---|
| Method | Spinning blades in loud blender quickly produces juice | Fruits and vegetables are grinded into pulp, which is deposited in a mesh bag. Up to 14,000 pounds of pressure are slowly applied to bag to express the liquid from the pulp |
| Nutrients | Heat produced by the spinning blades has a detrimental effect on the enzymatic and nutritional content of the final product | More enzymes, biological activity, vitamins and nutrients because the juice is slowly expressed instead of sliced up and blended |
| Leafy Greens | Thin blades inefficient at handling leafy greens | Grinding and pressing easily handles leafy greens |
| Taste/Texture | Grittier inconsistent taste and texture with more pulp | Smoother and cleaner taste, less pulp, crisper |
| Structure | Higher water content contributes to rapid deterioration | Juice is more evenly made with less separation |
| Shelf-life | Several hours | 3-5 days |
| Cost | Affordable for home use | Expensive |

Result of Leafy
Greens as
Ingredients

 

14.     Consumers valued the cold pressed juices because they were fresh – there was no processing or preservation step after the cold-pressing released the liquids from the fruit and vegetable ingredients.

15.     "Cold-pressed" has a positive connotation among consumers, who are willing to pay a premium price for products represented to be made in this manner.

16.     Food companies realized this popularity but recognized that its greatest attribute – that it was only cold-pressed – made achieving scale, and profits, difficult.

17.     This was because of the shelf-life of 3-5 days, making distribution nationwide challenging to impossible, and the difficulty of predicting supply and demand resulted in discarded product.

18.     New technology called high pressure Pascalization emerged which applied up to 87,000 pounds per square inch ("psi") to the already bottled juice products.

19.     Pascalization extends a juice's shelf life from 3-5 days to 6 weeks, through protein denaturation along with inhibition and reduction of enzymatic and microbial activities which existed *after* the cold pressing.

4

20.     Companies are reluctant to disclose much about the Pascalization step on their labels because they realize the positive connotations of "cold-pressed" are associated with the absence of a processing step.

21.     Though not relevant to the present allegations, defendant previously labeled their Products as "raw" despite being Pascalized after cold-pressing.

<u>c. 2014</u>



22.     This was technically true in the sense that Pascalization does not involve the application of heat but for undisclosed reasons, the "raw juice" designation was removed.

23.     The Product labels are misleading for the following reasons, set forth in greater detail below:

1.   3 of 4 Products labeled "Juice" without Qualifying Term

2. names of all 4 claim to be exclusively vegetable juices

3. modifying term of "cold-pressed" is intermediate production step and the final high pressure processing/Pascalization step is not even disclosed

4. citrus juices in the products are not even cold-pressed

5. roots and ginger Product contains puree, which is cooked

24. Defendant failed to comply with federal statutes and regulations regarding labeling the Products, resulting in them being misbranded.

25. Plaintiff seeks relief under state consumer protection law, GBL §§ 349-350, because the labels are misleading to plaintiff and reasonable consumers.

26. To the extent any claims herein are based on a violation of state law, it mirrors federal requirements.

27. All products are required to have a non-misleading statement of identity on the front label which can be a common or usual name or an appropriately descriptive term.

28. Beverages that contain fruit and/or vegetable juice are required to have a statement it is required that common or usual name is a descriptive term that is not misleading.

### 3 OF 4 PRODUCTS LABELED "JUICE" WITHOUT QUALIFYING TERM

29. Three of the four Products – "Greens & Avocado," "Greens & Greens," and "Greens & Apple – are represented as being a "vegetable juice blend" on the front label when in fact these products are not 100% juice.

| Greens & Avocado | Greens & Greens | Greens & Apple |



30.     The Products are required to, but do not, use a qualifying term such as "drink," "beverage" or "cocktail" because they are not 100% juice. 21 C.F.R. § 102.33(a).

| Juice Drink | Juice Beverage |

31.     Consumers see terms like "drink," and "beverage" and know such products are not 100% juice, but expect a product labeled only "juice" to be 100% juice.

**THE NAMES DO NOT INDICATE THE PRODUCTS INCLUDE FRUITS**

32.     The Products' front label affirmatively represents that the contents are only

derived from vegetables "vegetable juice blend" as part of their common or usual name despite each variety containing multiple fruit juices.

33.     The absence of any fruit is also emphasized by one of the side panels.



Front Panel                Side Panel

34.     All the Products name and/or imply the presence of vegetable juices on the label in places other than the ingredient list, including in the images/vignettes at the top.

35.     However, they all contain juices derived from fruits, indicated below, which are not named or implied on the label other than in the ingredient list, in contravention of 21 C.F.R. §§ 102.5(a) and 102.33(c).

| Name | Ingredient List | Fruits |
|---|---|---|
| Greens & Greens | INGREDIENTS: CUCUMBER*, CELERY*, KALE*, ROMAINE*, LEMONS*, LIMES*, FENNEL*, PARSLEY*, SPROUTED QUINOA*, BASIL*, SEA SALT, CAYENNE*. *ORGANIC | Lemon<br>Lime<br>Cucumber |
| Greens & Apple | ORGANIC INGREDIENTS: CUCUMBER, APPLE, CELERY, KALE, COLLARD GREENS, SPINACH, LIMES, GINGER, BROCCOLI. | Lime<br>Apple<br>Cucumber |
| Roots & Ginger | INGREDIENTS: CARROTS*, BEETS*, SWEET POTATO PUREE*, ORANGE JUICE*, CUCUMBER*, CELERY*, LEMON JUICE*, GINGER*. *ORGANIC | Lemon<br>Orange<br>Cucumber |
| Greens & Avocado | INGREDIENTS: CUCUMBER*, CELERY*, ORANGES*, AVOCADO*, SPINACH*, LEMONS*, OLIVE OIL*, SEA SALT, TURMERIC*, CAYENNE*. *ORGANIC | Lemon<br>Orange<br>Cucumber |

36.     Fruits are the parts of a plant that stem from its flowers and are characterized by the presence of seeds.

37.     Lemons, limes, apples and/or oranges are present in all of the Products.

38.     Cucumbers are fruits because they develop from a flower and contain seeds.

39.     The lighter and milder taste of cucumber juice contrasts strongly with leafy greens (kale, spinach) and is more similar to a taste of juice derived from other fruits.

40.     The Products' names are misleading because plaintiff and reasonable consumers sought to purchase products which only contained vegetable juices and thought they did due to the product names.

41.     It is reasonable to expect the Products only contain vegetables because:

- vegetables are generally more expensive than fruits, and coupled with the Products' premium price, the consumer will think "you get what you pay for"

- the label colors are intentionally distressed shades of red and green, not the bright colors consumers associate with fruits

- absence of non-misleading product name

## MODIFYING TERM "COLD-PRESSED" IS  INTERMEDIATE PRODUCTION STEP

42.     Consumers are accustomed to juice labels with modifying terms such as frozen concentrated, pasteurized and canned.

43.     If processed and concentrated juice is displayed in a clear bottle, a consumer will not be able to distinguish it from juice that was fresh and not from concentrate.

44.     These terms provide information related to the way the product was made, which is related to its quality and freshness.

45.     Nevertheless, there is generally no affirmative requirement that a juice product indicate anything related to its production method.

| 100% Pure Apple Juice <u>Pasteurized</u> | Frozen Concentrated <u>Apple Juice</u> | Cold-pressed Vegetables… <u>Organic Vegetable Juice Blend</u> |
|---|---|---|

  

46.     Consumers see the Products and are drawn to connecting the terms "cold-pressed vegetables" and "organic vegetable juice blend."

47.     The Products' names are misleading because it uses the modifying term "Cold-pressed vegetables" term in close proximity to the term, "organic vegetable juice blend."

48.     These terms are in similar shades of color and separated by a small ellipsis on the front label such that they are intended to be read together.

49.     Because vegetables is the last word of the first term and second word of the second term, it is understood as representing the Products as "cold-pressed vegetable juice blend."

50.     It is misleading to use "Cold-pressed" as a modifying term to "organic vegetable juice blend" to identify the Products' because cold-pressing was an intermediate

production step.

51.     After certain ingredients are cold-pressed, the Products are subjected to high

pressure Pascalization/processing.

52.     The Products' names are not consistent and/or uniform with those of similar

products, made through being cold pressed and then high pressure processed.  21 C.F.R. §

102.5(a).

| Forager Project | Bolthouse Farms<br>(Owned by Campbell's Soup) | Evolution<br>(Owned by Starbucks) |
|---|---|---|

 

53.     By identifying and describing its products as "cold pressed," it is confusingly

similar to products which have been cold-pressed but have not undergone Pascalization

treatment.

54.     Defendant's use of "cold pressed" as a modifying term is misleading because

consumers are accustomed to seeing a truthful and non-misleading product name, especially where no other label information provides context or clarification.

55.    Plaintiff and reasonable consumers understood "cold-pressed" as not as just another fact, but as what the product is.

56.    This identification and description of the product is the only information on the entire label relating to any production method.

57.    It is reasonable that a consumer will see the label and not expect the product was subjected to Pascalization since that is not on the label.

58.    A reasonable consumer understands a product's name to refer to it in its final, consumable form, in the same way that calories or nutrients in a food are not based on a food before it is finished and ready to eat.

59.    The descriptive term "cold-pressed," without any other information related to how the product was made, (1) gives the impression that all of the fruit and vegetable ingredients in the product have been cold-pressed, (2) no processing or modifying steps occurred after the cold press step, (3) implying the final consumable food is cold-pressed juice which has not been subsequently modified and (4) the product has not been processed after being expressed and/or extracted from the fruits and vegetables.

60.    Defendant's "cold-pressed" claim is a half-truth because it volunteered some communication, but omitted the material fact of high pressure processing/Pascalization.

61.    Consumers are able to purchase juice which has only been cold-pressed and it is available in locations where defendant's Products are also sold.

## CITRUS JUICES IN THE PRODUCTS ARE NOT COLD-PRESSED

62.    The Products are based on low-acid (defined by the FDA as having a pH

13

greater than 6) and high alkaline ingredients as indicated below.

| Ingredient | Approximate pH |
|---|---|
| Carrots | 5.88 - 6.40 |
| Romain (Lettuce) | 5.78 - 6.06 |
| Apple | 4.50-4.88 |
| Beets | 5.30 - 6.60 |
| Celery | 5.70 - 6.00 |
| Arugula | 6.00 - 7.00 |
| Basil | 5.50-6.50 |
| Collard Greens | 6.50-6.80 |
| Cucumbers | 5.10-5.70 |
| Spinach | 5.65-6.80 |
| Parsley | 5.50-6.05 |
| Ginger | 5.6 to 5.9 |
| Broccoli | 6.30-6.85 |
| Avocado | 6.29-6.59 |
| Sweet Potato | 5.30-5.60 |
| Kale | 6.40-6.80 |

63.     If the Products only consisted of the above ingredients, defendant would not be able to use high pressure Pascalization after cold pressing.

64.     This is because FDA requires low-acid foods to undergo thermal processing to fully inactivate bacterial spores, which Pascalization processing is unable to do.

65.     To avoid the requirement of thermal processing, the products are acidified through the addition of citrus juices (lemon, lime and orange), which have a pH range from 2.0-2.6.

66.     Once the total pH is below 4.6, the products are permitted to be processed in a more flexible manner as long as there are certain reductions in microorganisms.

67.     The inclusion of citrus juices in the products means that all the ingredients

14

are not cold-pressed, because citrus fruits are distinct from leafy greens, pome fruit (apples) and root vegetables because:

- its outer skin or epicarp is a composite structure with flavoring substances

- direct pressing would result in imprecise quantities of peel, peel oil and harsh taste

- lemon and lime processing depends on capturing the juice, peel and peel oil, without which the operation would not be profitable

68. Due to these issues, extraction machines developed in the mid-20th century to cleanly separate the juice, peel and peel oil without crushing them through pressure.

69. After the juice is released from the fruit, it flows to a surge tank.

70. Because the juice is raw and untreated, it is prone to rapid microbial, enzymatic, and oxidative deterioration, so it is chilled to 8–10°C by pumping it through a heat exchanger against mechanically refrigerated water or brine.

71. The juice contains an excessive quantity of suspended solids - pulp juice sacs, membranes, peel – that are removed through filtration, centrifugation and hydrocyclones.

72. Stabilization is carried out through thermal pasteurization according to standard industrial protocols to inactivate enzymes (mainly pectin methylesterase or PME) and destroy pathogenic and spoilage-causing microorganisms.

73. The flavonoids of naringin and limonin cause citrus juice to become bitter, which is minimized through debittering techniques such as adsorption onto cellulose resins.

74. It is probable that defendant uses citrus juice from third-parties because:

- labor intensive and unprofitable to have personnel manually peeling citrus

- lemon and orange juice have a standard of identity which requires conformity with processing guidelines

15

- citrus processing obtains juice, peel and peel oil from the lemons and limes, something a cold-press facility operation is not intended to do

- special equipment and expertise required to produce citrus products

- various grades citrus juices established by USDA – not mandatory, but correspond to levels of quality to facilitate distribution among food manufacturers

- largest companies in premium juice sector (cold pressing followed by high pressure) add citrus juices obtained from third parties, such as United Juice Companies on East Coast and Perricone Farms on West Coast

75.     Once the citrus juice is blended with the cold-pressed juices and the pH is lower than 4.6, the juice is bottled, sealed, then processed with high pressure Pascalization.

## ROOTS AND GINGER CONTAINS PUREE

76.     The Roots & Ginger product is further misleading because even though it is described and identified as "Cold-pressed Vegetables…Organic Vegetable Juice Blend," it contains "Sweet Potato Puree."

77.     The processing of sweet potatoes into a purée requires multiple steps.

78.     First, the peel is removed through use of a steam peeler machine.

79.     The steam peeler inactivates the enzyme polyphenoloxidase that darkens the potatoes once peeled and puréed.

80.     Next the sweet potatoes go through a therminutor which chops them up and adds steam to soften them.

81.     The resulting purée is heat-treated and held at a constant temperature of about 160° Farenheit for 10 minutes, allows the natural amylase enzymes to break down the starch sugars, giving the resulting purée its characteristic sweet potato "flavor."

16

82.     The purée is heated to 205° Farenheit and held for two minutes, inactivating the amylase enzymes and stopping the breakdown of remaining starch.

83.     The product is then strained and processed.

84.     As a result of the presence of sweet potato puree in the Roots & Ginger, the description and identification as "cold pressed vegetables…organic vegetable juice blend" is misleading and deceptive because sweet potato puree is not made through being cold-pressed.

85.     The above-referenced representations and omissions are material facts which plaintiff and class members relied on, paying more than they would have and not receiving all that they bargained for.

86.     Excluding tax, the products cost between $5.99 and $8.99, premium prices compared to other products manufactured in multiple, similar production steps.

Jurisdiction and Venue

87.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

88.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

89.     This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

90.     Venue is proper because plaintiff and many class members reside in this District and defendant has been doing business in this District and in New York.

91.     A substantial part of events and omissions giving rise to the claims occurred in this District.

Class Allegations

17

92.     The classes consist of all consumers in all states and all consumers in New York State who purchased any Products bearing any actionable representations herein during the statutes of limitation periods.

93.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.

94.     The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

95.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers, entitling them to damages.

96.     Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

97.     Plaintiff is an adequate representative because plaintiff's interests do not conflict with those of other members.

98.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

99.     Individual actions would risk inconsistent results, be repetitive and are impractical, as the claims are modest.

100.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

101.    Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

<u>Parties</u>

18

102.     Plaintiff is a citizen of Nassau County, New York.

103.     Defendant is a Delaware limited liability company, which, upon information and belief, has no members who are citizens of New York and has a principal place of business in California.

104.     In summer 2017, plaintiff purchased the Roots & Ginger and Green & Green Products for personal consumption, for no less than $6.99 each, excluding tax, at a grocer in this District.

105.     Plaintiff bought these products because prior to purchase, he saw and relied upon their principal display panels which identified it as a "cold-pressed vegetables…organic vegetable juice blend."

106.     Plaintiff expected that both Products would contain (1) only vegetables because of the part of their name "organic vegetable juice blend" (2) only contain vegetable ingredients which had been cold-pressed as a result of seeing the part of its name "Cold-pressed Vegetables" (3)

107.     Plaintiff expected that because the products only contained the reference to cold-pressing on the front label, that they had not been processed after being cold-pressed.

108.     Plaintiff purchased the Products because he intended to consume products which possessed the attributes and features described herein and opted against buying less expensive juices not so represented.

<u>Violations of New York General Business Law §§ 349 & 350</u>

109.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

110.     Defendant's acts, practices, advertising, labeling, packaging, representations

and omissions are not unique to the parties and have a broader impact on the public.

111.     Plaintiff and the class were misled because they sought to purchase a juice product which was only vegetable juices, only cold-pressed, and consisted of ingredients which had only been cold-pressed, since that is what their labels state.

112.     Defendant offered partial, voluntary disclosures with respect to the occurrence of high pressure processing, when it was not required to say anything.

113.     This is material since the additional manufacturing intervention modifies the composition of the intermediate juice product.

114.     However, once defendant made a claim of the primary and valued production method, it became misleading to say nothing with respect to what occurred after, *viz*, high pressure processing.

115.     Defendant claims the Products are entirely vegetable juice despite the presence of fruits accounting for close to fifty percent of the ingredients.

116.     The above-referenced representations and omissions on the labeling and packaging were material facts that are deceptive, misleading and false advertising which plaintiff and class members relied on, paying more than they would have and not receiving all that they bargained for.

117.     As a result, plaintiff and class members are entitled to damages.

                    Breach of Express Warranty and Implied Warranty of Merchantability

118.     Plaintiff repeats and realleges all allegations in foregoing paragraphs.

119.     Defendant manufactures and sells juice products and warranted to plaintiff and class members that its Products consisted only of vegetable juices and had only been cold pressed.

120.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

121.    As a result, the Products lacked those attributes attributed by consumers to such products.

122.    Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

Fraudulent Misrepresentation

123.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    Defendant knowingly represented the Products as being cold pressed without disclosing that the Products were subjected to high pressure Pascalization.

125.    Defendant did not want to claim the Products undergo processing step because this would make them no different than competitor's products and prevent them from charging consumers more money, *supra*.

126.    Though defendant was not required to disclose any production methods used, their voluntary disclosures which provided half the truth were misleading because such representations failed to state additional or qualifying matter.

127.    This was calculated to induce a false belief that the Products were substantively and materially different and of higher quality than they actually were.

128.    The cold-press claim, the emphasis on vegetable juices like roots and leafy greens and the gritty, faded typeface, are all designed to convey a product that is intentionally unglamorous, even gritty.

129.    Defendants had an affirmative duty to disclose the Products were treated with

21

high pressure Pascalization/processing because this would complete their partial statement with respect to the occurrence of the "cold-pressed" step.

130.    All of the representations are interrelated and designed to be viewed in totality, each discrete statement reinforcing the others.

131.    Defendant was motivated by financial gain and attempting to hold back competition from large market entrants and knew other juice products more accurately represented their products and were lower-priced.

132.    By omitting the material fact that cold-pressing was merely the first step and that the Products contained a significant number of fruits, defendant induced plaintiff and consumers into believing that their products were substantively different than they were.

133.    Plaintiff and class members reasonably relied same, paying a premium for the products, above what they would have paid had they known the truth, without getting all they bargained for.

<u>Unjust Enrichment</u>

134.    Plaintiff repeats and realleges all allegations in foregoing paragraphs.

135.    Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff, individually and on behalf of all others similarly situated, prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct its practices to comply with the law;

3.  Awarding monetary treble and punitive damages and interest for the common law and GBL claims and costs and expenses, reasonable fees for plaintiff's attorneys and experts; and

4.  Such other and further relief as the Court deems just and proper.

Dated:  February 20, 2018

Respectfully submitted,

Levin-Epstein & Associates, P.C.

/s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

2:17-cv-06302 (LDW)(SIL)
United States District Court
Eastern District of New York

Josh Berger, individually on behalf of himself and all others similarly situated,

> Plaintiff

- against -

Forager Project, LLC,

> Defendant

# First Amended Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 20, 2018

/s/ Joshua Levin-Epstein
Joshua Levin-Epstein